*Hitchcock, J.
The object of the parties in this case seems to be to obtain a judicial construction of the fourth clause of the will of David E. Benedict, which has become necessary in consequence of the death of Eliza Ann Brewster, and her two children, Platt B. and William D. The complainant, in the original bill, claims that he is entitled to the estate devised to the two latter, as their father; and the complainant, in the cross:biIl, claims that he is entitled to the same estate, as their half brother. The defendant, Jonas B. Benedict, claims the same estate, both under the will and by virtue of the statute of Ohio regulating descents and the distribution of personal estate.
A preliminary question is made, whether under this will the estate devised is to be considered as real or personal. We admit the doctrine that where, by the direction of a will, real estate is to be disposed of and converted into money, a court of equity will consider it as money. But there is nothing in this will to show that such was the intention of the testator. On the contrary, the testator devises his estate, “both real and personal,” to, or in trust for, his devisees. He does not, in positive terms, direct it to be sold, but if it should be sold, he directs in what manner the avails shall be invested.
Another question is raised as to whether the law of Connecticut or of Ohio is to govern in the decision of the particular question submitted to the court. To a very considerable extent, the construction of the will must depend upon the law of Connecticut. But when it is considered that the devisees and legatees are all in Ohio ; that the trustee is in Ohio ; that the property itself, so. far as it can be done, is to be, and actually has been, transmitted to Ohio; when a question arises as to the distribution of that property thus transmitted, and where it is not controlled by the will that question must be'settled according to the laws of Ohio.
The intention of the testator is apparent upon this will. That intention was, to distribute his estate, in equal parts to *his sisters and brother, reserving the use of one-fourth part to his father and mother during their joint lives, and the life of the survivor. And it is equally apparent that it was his intention, in the event of the death of either of his sisters, and their children, with *384 out issue, that the portion of the estate allotted to such deceased sister should be equally divided between the remaining brother and sister; or in case of their death, then between their children, taking per stirpes. It did not enter into his mind that, by his will, any part of his estate was to go to strangers. Now is this intention to be defeated by any rule cf construction heretofore adopted ? And here I must be permitted to say that these rules, in most cases, are applied, not for the purpose of ascertaining, but of defeating the intention of a devisor or testator. In this state, however, we are required by statute to carry out this intention ; and I presume no such statute would have been passed had it not been supposed that these antiquated rules of construction were too much regarded by our courts.
The clause in controversy in the will of David M. Benedict is the fourth. By this clause, one-fourth of the estate is devised to Joseph B. Benedict, in trust for Eliza Ann- Brewster, and it provides that, if the said Eliza Ann shall survive her husband, then, at his death, the trustee is to convey the pi’operty to her, and to her heirs and assigns, to bo hers absolutely. But if she shall die before her husband, then the said trustee is required to transfer and convey the same property “ to the child or children of the said Eliza Ann, and their legal representatives, and their heirs and assigns forever ;” and if there were no such children, qr representatives, then the said fourth part of the estate was to be equally divided between Jonas B. Benedict and Clarissa Gallup, if then living.
Eliza Ann died before the testator, leaving her two children, Platt B. and William D., who were both living at the death of the testator, but who died within eighteen months thereafter. Now, had these children, as well as their mother, died before the testator, I suppose there is no controversy but that Jonas *B. Benedict and Clarissa Gallup would have taken the estate. But it is contended that, inasmuch as the children were living at the time, they took the estate in fee simple, and that, having died without issue, it must go either to the father, according to the law of Connecticut, or to the half-brother, according to the law of descents and distribution of Ohio. This, surely, is not according to the intention of the testator. He did not intend that his estate should, under his will, bo transmitted to those who were not of his own blood.
*385 But suppose the children of Eliza Ann Brewster did take an estate in fee simple, and the will of the testator can have no further effect to control property, but that the same must be distributed according to the statute regulating descents, how stands the case ?
This statute (Swan’s Stat. 286) provides, “that when any person shall shall die intestate, having title or right to any real estate of inheritance in this state, which title shall have come to such intestate by descent, devise, or deed of gift from any ancestor, such estate shall descend and pass in parcenary to his or her kindr'ed, as follows : First, to the children of such intestate, or their legal representatives; if there- be no children, or their representatives, then to tho brothers and sisters of the intestate, who may be of the blood of the ancestor from whom tho estate came, or their legal representatives, whether such brother and sisters be of the whole or of the half-blood of the intestate.” If the estate came not by descent, devise, or deed of gift, the provision is, that it shall descend, first, to the children, and their legal representatives ; in failure of these, then to the brothers .and sisters of the full blood, and their representatives ; in failure of these, then to the brothers and sisters of the half-blood.
Now, is it the intention of this statute that, if the estate came to the intestate by descent from a brother or uncle, it shall descend, in the event of the failure of children, and of brothers or sisters of the full blood, to those brothers and sisters of the half-blood, but who are not of the blood of the *person from whom the intestate inherited ? Does it intend that an estate thus acquired, by descent, shall be governed by the same rules as if an original estate, acquired by the intestate by deed or devise from a ,person not in the line of inheritance? Must the estate have descended lineally, or have been devised by one in the direct -descending line, in order that it may not descend to those who are not of the blood of him from whom it came ? We do not so understand the law, or such to have been the intention of the legislature. True, the word ancestor is made use of; and by ancestor we understand, in common parlance, one from whom a person lineally descended. But this word must be taken in connection with tho whole subject matter of the act or instrument in which it is used.
In this act, relative to descents and the distribution of personal estates, the legislature seem to have divided the property of which a man might die seized into two classes or two divisions, to wit, *386 such as camo to him in the regular course of descent, including such as may have been devised to him, or which may have been conveyed to him by deed of gift, but which he would have inherited had there been no such devise or deed of gift, and such as he may have acquired by his own industry, or by the devise or deed of gift from a person to whom he could' not have inherited in the regular line, either lineal or collateral. In the first class of cases, the blood of the person from whom the estate came is to be regarded in the distribution ; in the last, the blood of the intestate. That such was the intention, it seems to us there can be no doubt.
, Then apply the statute, thus understood, to the case before the court. The children of Eliza Ann Brewster would have inherited this property had it not been devised to them by their uncle, David M. Benedict; and in that case, upon their death without issue, the brother and sisters of the testator would have been their heirs, to whom the property must have descended, excluding a brother or sister of the half-blood of said children, but not of the blood of the testator; so that whether this estate is to be governed by the manifest intention-*of the testator, as expressed in his will, or by the statute of descent, the result is the same. In either event, neither the complainant in the original bill nor the complainant in the cross-bill have any right to this property, and both bills must be dismissed.
Wood, C. J., being unwell, did not sit in this ease.